UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRUCE F. ESPOSITO, :
INDIVIDUALLY AND ON BEHALF :
OF ALL OTHERS SIMILARLY :
SITUAED :
    PLAINTIFF, :
: No.: 3:18-cv-02089 (VLB)
:
v. : May 25, 2021
:
NATIONS RECOVERY CENTER, INC., :
    DEFENDANT :

**MEMORANDUM OF DECISION APPROVING CLASS ACTION SETTLEMENT, AND AWARDING ATTORNEYS' FEES AND CLASS REPRESENTATIVE FEES**

Before the Court is Plaintiff's request for final approval of class action settlement, attorneys' fees, and class representative fees. This matter was initiated by a complaint filed on December 20, 2018 by the named Plaintiff, Bruce F. Esposito individually and on behalf of all other similarly situated. [ECF No. 1]. Plaintiffs allege that Nations Recovery Center, Inc. ("Nations Recovery") engaged in unauthorized collection activity by sending collection letters to Connecticut residents that improperly assessed post-judgment interest. By doing so, Plaintiffs allege that Nations Recovery violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, in that the "natural consequence of" its activity was "to harass, oppress, or abuse any person in connection with the collection of a debt" in violation of 15 U.S.C. §1692d, its actions constituted "an attempt to collect an amount not authorized by agreement or permitted by law" in violation of 15 U.S.C. §1692f(1), and constituted an improper "state[ment] that an amount certain is owing, which includes interest not awarded by a court or interest

at a rate not awarded by a court," in violation of 15 U.S.C. §1692e(2)(A).  [ECF No. 1].  For the following reasons, the Court approves the proposed settlement, and awards attorneys' fees and class representative fees.

I.      <u>**Background and Terms of Proposed Settlement**</u>

This class action has been brought on behalf of all Connecticut residents from whom Defendant attempted to collect money with post-judgment interest allegedly improperly added to the amount owed.  On May 28, 2020, the Court required Nations Recovery to submit additional information regarding its net worth to enable the Court to determine if the proposed settlement was fair, reasonable, and adequate.  [ECF No. 30].  On June 26, 2020, the Court entered an order preliminarily approving the proposed settlement agreement, form, and manner of notice.  [ECF No. 38].  The Court held a remote fairness hearing on December 10, 2020.  [ECF No. 50].  As of that date, no class member objected to the settlement or requested exclusion.  Defendant has objected to the request for attorneys' fees in certain respects but not the request for class representative fees.

The class consists of 61 consumers in Connecticut from whom Defendant attempted to collect debts in the year before the filing of the class action complaint. [ECF No. 29 at 2].  Of the 61, there were 33 members that were unreachable.  [ECF No. 44].  None of the members objected or opted out.  [ECF No. 45-1 at 2].  There were 28 timely claim checks cashed and zero untimely claims.  [ECF No. 44-2 at 2].

Defendant agreed to establish a settlement fund of $10,000 for the class members which could be claimed by cashing the check sent to each member.  [ECF No. 45-1 at 3].  The 28 class members that cashed their checks are therefore entitled

to a payment of $357.14 each. *Id.* at 2. Additionally, Defendant has agreed that the named plaintiff, Bruce F. Esposito, is to receive $3,000 for a class representative fee. Defendant has also agreed to assume the $3,194.89 in costs it incurred in settlement administration costs. *Id.* at 4.

Under the FDCPA, there is a statutory limit on the amount a successful class may recover. A successful class may recover damages up to the lesser of $500,000 or 1% of a Defendant's net worth. 15 U.S.C. § 1692K. At the time of the settlement agreement, Defendant Nations Recovery had a net worth of approximately $1,000,000, making $10,000 in settlement funds available to the class.

## II.  Analysis of Class Certification

As discussed in the Court's June 26, 2020 Order certifying the class, the numerosity, commonality, typicality, and adequacy of representation requirements of Federal Rule of Civil Procedure 23 for class certification were, and continue to be, met. [ECF No. 38 (Order Certifying Class and Preliminarily Approving Settlement) at 1-7]. In addition, the Court found, and continues to find, "that a class action is the superior method for a fair and efficient adjudication of this controversy under Federal Rule of Civil Procedure 23(b)(3)." *Id.* at 8-9. In sum, nothing has changed since the Court certified the proposed class, including during the conduct of the December 2020 Fairness Hearing, that might call into question the Court's decision to certify the proposed class. The class remains certified.

III.     Approval of the Settlement Agreement

*Legal Standard*

Federal Rule of Civil Procedure 23(e) provides that the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The Rule further provides that:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

Fed R. Civ. P. 23(e)(1)-(2). Thus, to be properly approved, the settlement must provide reasonable notice to class members of the settlement proposal and the settlement must be procedurally and substantively fair, reasonable, and adequate.

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Matheson v. T-Bone Restaurant, LLC*, No. 09-Civ.-4214, 2011 WL 6268216, at *3 (S.D.N.Y. Dec. 13, 2011) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 113 (2d. Cir. 2005)).

"To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)." *Id.* The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

4

*Grinnell*, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted).

The Second Circuit has further instructed that:

> A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion. A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement. A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.

*Wal-Mart,* 396 F.3d at 116-17 (internal citations and quotations omitted).

*Analysis*

a. **Adequacy of Notice**

Federal Rule 23(c)(2)(B) defines notice requirements for Rule 23(b)(3) classes, *providing* that:

> the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)   the nature of the action;
> (ii)  the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv)  that a class member may enter an appearance through an attorney if the member so desires;
> (v)   that the court will exclude from the class any member who requests exclusion; and
> (vi)  the binding effect of a class judgment on members under Rule 23(c)(3)

The Second Circuit has further clarified that "[t]he standard for the adequacy of a settlement notice in a class action under either the *Due Process Clause* or the

5

Federal Rules is measured by reasonableness." *Wal-Mart,* 396 F.3d at 113. Further, there are "no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member." *Id.* at 114 (internal citations and quotation marks omitted).

Here the notice to the class was reasonable and sufficient to satisfy Rule 23's requirements. On or about August 20, 2020, first class notices which were approved by the Court in its prior order preliminarily approving the proposed settlement were mailed to all 61 class members. [ECF No. 45-1 at 2]. Of the 61 mailed, six were returned undeliverable after the initial mailing. *Id.* After skip tracing them with Accurint, the administrator found better addresses for three of them, and remailed to those records. One of those remails cashed their check. *Id.*

*The Settlement was Fair, Reasonable, and Adequate*

    b.    Procedural Fairness

Here, the settlement was reached after the Plaintiffs conducted a thorough investigation and evaluation of the claims and was the product of an arm's length negotiation between the parties. The parties engaged in significant discovery relating to class size, Defendant's net worth and Defendant's process and procedures for collecting debt within Connecticut which enabled them to evaluate the strengths and weaknesses of their claims. Further, Plaintiff's counsel's practice primarily focuses on FDCPA claims and therefore Plaintiff's counsel have

6

acquired expertise in evaluating the strengths and weaknesses of claims brought under the FDCPA. These facts demonstrate that the settlement achieved met the requirements of procedural fairness.

    c.    *Substantive Fairness*

        i.  *Complexity, expense and likely duration*

Although the present matter is not particularly legally or factually complex, there would still be a significant amount of work and effort to prepare the case for trial. The parties have indicated that it would likely take additional time before the parties would be ready to try the case. Moreover, the expense of litigating this matter through trial would likely outweigh any potential recovery considering the FDPA's statutory damages cap limiting recovery to 1% of Defendant's net worth. At this juncture, the attorneys' fees are estimated to be more than $35,000, which is already well above the proposed settlement, and likely above any recovery that could be obtained at trial. Consequently, this factor weighs in favor of finding the settlement adequate and reasonable.

        ii.  *Reaction of the class*

It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy. *In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001). The parties have indicated that the reaction of the class has been favorable. There have been no objections or exclusions. "[T]he absence of objectants may itself be taken as evidencing the fairness of a settlement." *Ross v. A.H. Robins*, 700 F. Supp. 682,

684 (S.D.N.Y. 1988) (internal quotation marks and citation omitted). Accordingly, this factor also weighs in favor of finding the settlement reasonable and adequate.

### iii. Stage of Proceedings and Amount of Discovery Completed

When weighing this factor, the Court "need not find that the parties have engaged in extensive discovery … Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the Settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (internal quotations and citations omitted), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Here, the parties engaged in significant formal as well as informal discovery related to class size, certification, Defendant's process for collecting debts in Connecticut, and Defendant's net worth. Such discovery has enabled the Court to intelligently make an appraisal of the proposed settlement. The confirmation of Defendant's net worth through discovery and the Court's own investigation has provided the Court with facts necessary to appraise and find the proposed settlement fair and reasonable.

### iv. Risks of establishing liability and damages

The fourth and fifth *Grinnell* factors, the risks of establishing liability and damages, likewise support approval of the settlement. This factor surveys the possible risks of litigation in order to balance the likelihood of success and potential damages against benefit of settlement. *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 319 (3d Cir. 1998).

As set forth at page 2 of the settlement agreement, [ECF No. 28-1], Defendant contests liability in this case. Even if the Court agrees with the Class's interpretation of the FDCPA, any damage analysis compiled by Plaintiff based on Defendant's net worth likely would be contested and appealed. The settlement agreement in this case avoids these issues, provides the Class with a substantial recovery and accomplishes an excellent result without the need for a full trial of the issues.

> v. *Risks of maintaining the class action through trial*

For the same reasons, the sixth *Grinnell* factor, the risks of maintaining the class action through the trial, strongly supports this settlement. Moreover, the settlement here came before a ruling by the Court on class certification. Now that plaintiff has prevailed on preliminary approval, it is by no means certain that the Class would not be decertified during trial or on appeal. *See Saunders v. Berks Credit and Collections*, No. CIV 00-3477, 2002 WL 1497374, at *12 (E.D. Pa. Jul. 11, 2002). Defendant could always raise a number of issues in favor of decertification, any one of which could result in the loss of certification. This factor weighs in favor of approving the settlement.

> vi. *Ability of Defendant to withstand a greater judgment*

The seventh *Grinnell* factor, the ability of the Defendant to withstand a greater judgment, is neutral. Because the FDCPA caps the amount of dollars available for class recoveries, whether defendant could have afforded to pay more to settle this case is not really a material consideration.

> vii. *Range of reasonableness of the settlement in light of the best possible recovery in light of all the attendant risks of litigation*

9

The eighth and ninth factors call upon the Court to weigh the range of reasonableness of the settlement fund in light of the best possible recovery and attendant risks of litigation. In doing so, the Court is "called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462. However, "[i]t is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement. Such procedure would emasculate the very purpose for which settlements are made." *Id.* (ellipsis omitted). "The determination of whether a settlement amount is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum … Instead, there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Matheson*, 2011 WL 6268216, at *6 (internal quotation marks and citations omitted). Indeed, as was noted in *Grinnell*, 495 F.2d at 455 n.2, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." And, while not the situation in this case, the fact that a "settlement 'may only amount to a fraction of the potential recovery' will not per se render the settlement inadequate or unfair." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975).

In this case, the settlement is more than fair. As noted, the settlement confers a substantial cash benefit upon the Class – a relatively low number of class members will receive 1% of Defendant's net worth, the maximum permitted by federal statute. Experienced counsel, who negotiated at arm's length and possess all the relevant information, strongly recommend the settlement to the Court. Each side recognizes the risk of failure and the high costs attendant to continued litigation. The legal and factual difficulties that Plaintiff foresees with respect to liability and damages already have been described. Add to those predictable difficulties the unpredictability of a jury trial – where witnesses or jurors could react in unforeseen ways – and the tremendous benefit to the Class of the present settlement becomes even more apparent.

Litigation risk, moreover, does not end with the trial. In this case, post-trial motions and appeals would not be unlikely. Where liability is highly contested, it is likely that any judgment entered would have been the subject of post-trial motions and appeals, further prolonging the litigation and reducing the value of any recovery. *Parks v. Portnoff Law Associates, Ltd.*, 243 F. Supp. 2d 244, 253 (E.D. Pa. 2003).

IV. <u>Approval of Attorneys' and Class Representative Fees</u>

A. Legal Standard

The Court is mindful that the FDCPA mandates the payment of reasonable attorneys' fees by the defendant in order to provide attorneys with an incentive to pursue smaller claims. See 15 U.S.C. §1692k(a)(3); *Emanuel v. Am. Credit Exch.*, 870 F.2d 805, 809 (2d Cir. 1989).

11

The Second Circuit has traditionally recognized two distinct methods to determine what is a reasonable attorney's fee.  "The first is the lodestar, under which the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate.  Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors, such as the risk of the litigation and the performance of the attorneys."  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (internal citations and quotations omitted).  Under the second method, the court sets some percentage of the recovery as a fee.  *Id.*  The Second Circuit subsequently clarified the proper analysis with respect to attorneys fee in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of Elections*, 522 F.3d 182  (2d Cir. 2008) finding that the term "lodestar" was outdated and instead used the term "presumptively reasonable fee."  *Id.* at 189-90.

However, the Second Circuit has noted that "[w]hile the *Arbor Hill* panel indicated its preference for abandonment of the term 'lodestar' altogether, the approach adopted in that case is nonetheless a derivative of the lodestar method," *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 n.2 (2d Cir. 2010), and has held that "it remains the law in this Circuit that courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method."  *Id.* at 417 (citing cases).  In *Arbor Hill*, the Second Circuit instructed that:

> [T]he better course – and the one most consistent with attorney's fees jurisprudence – is for the district court, in exercising its considerable

> discretion, to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the 'presumptively reasonable fee.'

*Arbor Hill*, 522 F.3d at 190.

Consequently, courts have described the "presumptively reasonable fee" analysis as a "process" that is "really a four-step one, as the court must: '(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award.'" *Vereen v. Siegler*, No.3:07-cv-01898, 2011 WL 2457534, at *1 (D. Conn. June 16, 2011) (quoting *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F.Supp.2d 507, 510 (S.D.N.Y. 2010)).

B. Analysis

As an initial matter, it appears to be good news that Defendant contests Plaintiff's application for attorneys' fees as it indicates that it is unlikely that the parties are colluding to settle the case to the detriment of the class. 5 Moore's Federal Practice § 23.164 ("class counsel and opposing parties may not decide among themselves the appropriate percentage of the fund that will be allocated to attorney's fees").

13

Additionally, Defendant does not contest that Plaintiff's attorneys' fee requests is in any way improper or unwarranted, but rather simply requests an approximately 10% reduction based on hourly rate and another 5% based on vague or block-billed entries.  [ECF No. 47 at 1-2 ("Defendant does not dispute Plaintiff's entitlement to obtain an award of attorneys' fees as the FDCPA mandates such an award for a successful Plaintiff.  However, as the following will more specifically demonstrate, Defendant disputes that Plaintiff is entitled to the full amount of fees sought in his motion.").

i. *Reasonable Hourly Rate*

In *Arbor Hill*, Second Circuit indicated the relevant factors in determining the reasonable hourly rate were articulated in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19.

Reasonable hourly rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  "[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998).  The

14

determination of a prevailing rate requires a 'case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'" *M.K. ex rel. K. v. Sergi,* 578 F.Supp.2d 425, 427 (D. Conn. 2008) (quoting *Farbotko v. Clinton Cnty. of N.Y.,* 433 F.3d 204, 209 (2d Cir. 2005)).

As to Plaintiff's requested hourly rate of $450/hour for Attorney Faulkner, Attorney Faulkner correctly points out that nearly a decade ago District Judge Janet Hall "recognized that the $400 rate was under-market even then." [ECF No. 46-1 at 11 n.1 (citing *Dina v. Cuda Assocs., LLC*, No. 3:12-cv-00523, [ECF No. 82 at 4] (D. Conn. Dec. 30, 2013))]. Attorney Faulkner cites other cases where comparable, experienced attorneys have been awarded the same or more than $450/hour, in less complicated, non-class action cases. *Id.* at 4 (noting $450/hour awarded to lead attorney Stephen Aronson of Robinson & Cole in employment case, *Saliga v. Chemtura Corp.*, No. 3:12-cv-00832 (D. Conn. June 1, 2016), $785.30/hour for experienced attorney achieving successful result in Social Security case, *Sama v. Colvin*, 2014 WL 2921661, at *4 (D. Conn. June 25, 2014), and $525/hour for experienced lead attorney in railroad employment case, *Barati v. Metro-North R.R. Co.*, 939 F. Supp. 2d 153, 156 (D. Conn. 2013). As District Judge Janet Bond Arterton stated in *Barati*,

> Attorney Goetsch is undeniably a leading specialist in the law governing railroad employees' rights, and his longstanding and highly developed practice makes him more efficient, creative, and effective for his railroad employee clients than an attorney of similar trial experience in federal litigation but without the benefits of his specialization. Based on Attorney Goetsch's experience, his success in this unique case, and the case law since *Serricchio* evidencing a rise in the prevailing market rate, the Court finds that an hourly rate of $525 for his work on this case is reasonable and fulfills the purpose of

> **federal fee shifting statutes to incentivize capable attorneys to take on meritorious cases under the FRSA.**

*Id.* One could make the identical statement regarding Attorney Faulkner and FDCPA litigation. She is a nationally recognized expert in this area, having successfully litigated hundreds of such cases through her 50-plus year career, having received the Vern Countryman Award from the National Consumer Law Center "for excellence and dedication in the practice of consumer law on behalf of low income consumers," and having served as chair of the Consumer Law Section of the Connecticut Bar Association, a member of the Federal Reserve Board's Consumer Advisory Council, and on the Board of Directors of the National Consumer Law Center. [ECF No. 46-3]. Under these circumstances, the Court finds that an hourly rate of $450/hour for Attorney Faulkner is not unreasonable, especially given the extremely efficient and successful way in which Attorney Faulkner handled this case.

As for Attorney Foster, the Court finds that his requested $400/hour is reasonable given his thirty years' experience in complex litigation matters, his prior service as a Partner at Squire, Patton Boggs in New York where he billed out at $585/hour, and his excellent and successful work in this case. [ECF No. 46-2].

    ii.   *Reasonableness of time spent*

"The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). Here, Attorneys Faulkner and Foster have submitted sufficiently specific and detailed time records indicating the nature of the work performed

which this Court has scrutinized.  It does not appear that such records include any excessive, redundant or otherwise unnecessary hours.

As for Attorney Foster's bills for paralegal work, the Court disallows this request, not because of a blanket prohibition on paralegal work in FDCPA cases *per se*, but because the work the paralegal did in *this case* was of a clerical nature that is non-compensable, as the paralegal's billing entries make plain. [ECF No. 46-2 at 6 ("review time"; "ph call to client re: last check from settlement, mail same"; "email corrected W9 to counsel"). Thus, Attorney Foster's paralegal's time should be excluded.  *See Garcia v. Law Offices Howard Lee Schiff, P.C.*, No. 3:16-cv-00791 (VAB), 2019 U.S. Dist. LEXIS 190535 at *7 (D. Conn. Nov. 4, 2019) (disallowing paralegal requested fees not because of paralegal status but rather because "purely clerical or secretarial tasks should not be billed under fee shifting statutes regardless of who performs them.").  Attorney Foster also, however, presents bills for a law clerk, Kayla Tenore, now a Quinnipiac Law School graduate, who was a summer associate in 2019 assisting on the case, and her billing records indicate legal tasks.  *Id.* at 4, 14-15 ("Caselaw research, finalizing memo in support"; "Edits to motion for class cert and memo in support + researching case law in 2nd ckt.").  Thus, the summer associate's time should be counted at Attorney Foster's requested rate of $100/hour.

Finally, as to the "block billing" and "impermissibly vague" 5% reduction Defendant requests, the billing entries are not so vague or "blocked" as to be unrecoverable.  *See* [ECF No. 46-2 at 13 ("pre[pare] for conf call w judge re status"; "pm edit of memorandum in support of motion for class cert, and affidavits and call

to client"; "edit settlement agreement"; "prepare P's affid and bio affid for self for motion)]. Thus, the Court will not reduce the requested fees on this basis.

Overall, Attorneys Faulkner and Foster and their staff, excluding paralegal clerical work, expended 79.85 hours[1] in preparing the case and facilitating the settlement process which included significant discovery into Defendant's net worth, collection practices in Connecticut, and class certification. The Court therefore finds that the time spent by Attorneys Faulkner and Foster and their staff to be reasonable.

Since the Court has found that (i) the requested hourly rates by Attorneys Faulkner and Foster and their staff to be reasonable; and (ii) the time spent by Attorneys Faulkner and Foster and their staff to be reasonable, the presumptively reasonable fee is appropriately set at $30,492.50 plus costs of $454.95, for a total of $30,947.45. Further, the Court sees no reason why the presumptively reasonable fee should be further adjusted downward, apart from the paralegal clerical work previously noted.

*iii.   Supplemental Fee Request*

Plaintiff submits a supplemental fee request seeking an award of $5,920 for work performed by Attorney Foster, but not Attorney Faulkner, in preparing a Reply to Defendant's Opposition to Plaintiff's Motion for Attorneys' Fees, in preparing for

---

[1] There are two errors in the fee application. First, Attorney Foster claims that he worked 40.6 hours, but his spreadsheet reveals that he actually worked 40.9 hours. Second, the first of two entries for Attorney Foster on December 5, 2018, shows that he worked .1 hours, but he actually billed that time as $80; it should be $40. [ECF No. 46-2 at pdf page 21 of 22].

18

and attending the Fairness Hearing conducted by the Court on December 10, 2020, and in preparing the supplemental fee application. [ECF No. 52].

Defendant does not object to the time spent or the adequacy of the billing entries for Attorney Foster's time. [ECF No. 53]. Defendant's only objection is to Attorney Foster's hourly rate of $400/hour. *Id.* But, as discussed, the Court has already found Attorney Foster's hourly rate to be reasonable, and so grants Plaintiff's Supplemental Motion for Attorneys' Fees.

### iv. Representative Fee

The Settlement Agreement also includes an award of $3,000 to the class representative in recognition of his efforts on behalf of the class. "Service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Castagna v. Madison Square Garden, L.P.,* No.09-cv-10211 (LTS) (HP), 2011 WL 2208614, at *8 (S.D.N.Y. June 7, 2011). This award is consistent with the range of awards made in similar cases. See *Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM) (RLM), 2011 WL 6010211, at *13 (E.D.N.Y. Nov. 29, 2011) (approving class representative award of $3,000 in FDCPA class action); *Gross v. Wash. Mut. Bank*, F.A., No.02-cv-4135, 2006 WL 318814, at *6 (E.D.N.Y. Feb. 8, 2006) (approving $5,000 award for the named plaintiff in settlement of FDCPA action); *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.3d 35, 60 (W.D.N.Y. 2018) (approving $10,000 class representative fee when class representative "ha[d] been actively involved in the litigation of this case since its inception and ha[d] provided

19

counsel with assistance, which eventually led to a favorable settlement for the entire class."). Therefore, the Court approves the $3,000 class representative fee for the named plaintiff.

V.     Conclusion

The Court hereby finally approves the settlement as set forth in the Settlement Agreement as well as the requested attorneys' and class representative fees, minus the fees for paralegal clerical work. The total attorneys' fee award is $36,867.45, consisting of 29.25 hours for Attorney Faulkner at $450/hour = $13,162.50, 40.9 hours for Attorney Foster at $400/hour = $16,360, 9.7 hours for Law Clerk Kayla Tenore at $100/hour = $970, plus costs of $454.95, plus the supplemental fee award of $5920.  For the foregoing reasons, Plaintiff's motion for final approval is GRANTED.  The Clerk is directed to close this case.

                                                            IT IS SO ORDERED.


                                                         _____/s/_____

                                                         Hon. Vanessa L. Bryant
                                                         United States District Judge


Dated at Hartford, Connecticut: May 25, 2021